Good morning, Your Honors. May I reserve two minutes for rebuttal? You will, and I'll try and help you. Thank you. I appreciate that. Go ahead. May it please the courts, my name is David Landry. I'm here on behalf of the petitioner Lorena Lopez Valenzuela. Ms. Lopez Valenzuela, a Mexican national, entered the United States on a non-immigrant visa in 1986. She overstayed on that visitor visa. And then in 2007, she suffers a conviction in California State Court, and that brings her to the attention of the Department of Homeland Security. Department of Homeland Security places in removal proceedings based upon that or the overstay. She gains permanent resident status in April of 2010. Then a short time later, she commits, violates California Penal Code 484 again. DHS puts her right back into removal proceedings, maintaining that she has suffered two crimes involving moral turpitude after her date of admission. And this is a key point. I almost messed up, but that's part of the problem here, is that date of admission and date of adjustment are pivotal points here. And they're not clear in the INA. And at the time that the petitioner committed the crime in the early part of April 2010, the case law, this circuit's case law, was Chivamarin. Thank you very much. I apologize for that. I don't know if I'm right, but we all know what you mean. Yes. Yes. The S case. And in that case, although its wording is a little difficult to process, but basically it puts the alien in notice that it's the date of adjustment that is the date of admission for purposes of the 237 statute. Counsel, can I go to the question I've got and see if I? Maybe you can just answer. I want to give you a fair chance to answer. It seems to me if we read that case law the way you read it and interpret this the way you interpret it, then a person who comes to the country lawfully, as I think your client did, but overstays, is in a better position than somebody who comes to the country lawfully and maintains lawful status. In other words, she gets a free pass as to the first crime involving moral turpitude. So can you help me out with that inconsistency? I'm not quite sure if we call it a free pass. Well, what would we call it? Our case law suggests that that may be an absurd result, which is a pretty strong characterization. But I have the same concern that Judge Kristen has. Well, Your Honor, there are a lot of negative factors that fall into play when a person overstays on their visitor visa. The only benefit for a person to say, for example, is adjusting under 240A would be that they had been admitted, so to speak, when they entered on the non-immigrant visa. I don't know that there's a? I think what you're suggesting then would be that the person that entered overstayed isn't subject to the same rules. Am I correct? I think the idea would be that if she had done what she was supposed to do and not overstayed and gotten her adjustment of status then, then she'd be looking at exactly what she's looking at now. And what you're saying is that because she overstayed and wasn't here legally and then got this, what you call, a second admission, the first conviction kind of Or restarts the clock. That's the issue, that it restarts the clock. It restarts the clock. And why is that a correct result? How could that be the intended result is what I'm? Well, I'm not sure that it's the intended result or not the intended result. In fact, that's part of the problem with the statute itself is that we don't know what the intent of Congress is because they interuse the user's words. We know that Congress wanted to remove aliens who committed two or more crimes involving moral turpitude after admission. And in the hypothetical that Judge Kristen posed to you, a person who admitted and lawfully stayed for the whole period and suffered the same two convictions that your client suffered would be removed. But under your argument, we would not remove someone who adjusted later and restarts the clock, even though your client suffered two crimes involving moral turpitude convictions. That's the absurdity that we're concerned with. Well, Your Honor, I'm going to use this. 8 U.S.C. 1182 and 1237 or INA 212 versus 237, they are distinctly different in that they require different things for different individuals and that a person after they've been admitted as a permanent resident are subject to very different rules than those seeking admission, seeking to come into the United States. But Congress's concern is with removing undesirable aliens. And it has defined its concern as two or more violations of crimes involving moral turpitude after admission. That's the congressional intent that we have to give effect to, do we not? Well, Your Honor, I'm not sure that that's true. What's your strongest argument? Well, I think her strongest argument is that at the time that she committed the crime in April of 2010, she had the ability. Is that the first one or the second one? Second one. She only committed one crime in April of 2010. Thank you. OK. As of that time, what? She should have been able to rely upon the holding in Chimarran. And the board applied case law that followed after Chimarran. And in fact, in one of the cases, Eliazai, I'm probably mispronouncing that one also, yeah, E-L-Y-A-Z-A-I. I didn't hear it. They acknowledged that there's a distinction in Chimarran. And then the Ninth Circuit has a distinctly different rule. And if they had followed what they acknowledged was the rule, what they believed was the rule in the Ninth Circuit, then the respondent, I'm sorry, the petitioner wouldn't have been removable. Are there any other ongoing proceedings? Has she challenged the second conviction in state court? Has she challenged it on the basis of IAC? Anything else going on? No, she has not, Your Honor. Although, I did on Thursday file a supplemental brief. And from my perspective, it's a misappointment. Didn't we rule on that? I think we did. We denied your untimely. Yes, you did, Your Honor. Yeah. Right. That argument is not properly before us. I understand that. Was she represented at the time of the second conviction? I'm sorry? Was she represented at the time of the second conviction? Public Defender's Office. Counselor, do you want to save the balance of your time until we hear from you? Yes, Your Honor. May it please the court. My name is Edward Wiggers. I represent the respondent in this matter. As a matter of the plain language of the statute, it simply requires convictions for two or more crimes, two crimes involving moral turpitude, at any time after admission. Admission is defined as the entry after inspection  And the statute is defined as the entry after inspection by an immigration officer as long as the two convictions happen at any time after an admission. The petitioner is removable. So what I would like to ask you about is the, I guess what I'd call it, is consistency of how the BIA applies this. So you've got this case, and I know I'm going to botch the name Al-Yazi. Al-Yaji. Al-Yaji, OK. So in that case, the BIA says there's only, and I know it's a different subparagraph at 237, but the BIA says there's only one date of admission. And it says that what you're supposed to look at is the admission by which the person is in the country at the time they commit the crime. If you apply just that language in this case, the admission by which the petitioner in this case is in the country when she commits the crime is the adjustment of status. And she only committed one of these theft offenses after that. So isn't there some inconsistency in what you're arguing for here and how the BIA did it in Al-Yazi? No, Your Honor, because I'm afraid I have to disagree with your position that the adjustment is the admission by reason of which she was in the country. Because she was already in the country when she adjusted. The statute draws differences among admission. Fair point. Maybe I should add a word, by which she's properly in the country. By which she has status, yes. Yeah, status, OK. And status is separate from the concept of admission. Congress didn't include any reference to status in the admission definition. And when Congress wanted to make the maintenance of status significant, it did so, for it did so in the adjustment statute. But in Al-Yazi, the BIA considered the adjustment of status to be an admission, didn't it? The board considers adjustment of status to be an admission when there is no other admission. But counsel, isn't the answer to Judge Canelli's question yes? They did consider the second one to be the admission in that case. And that's opposing counsel's argument, I think. I can't pronounce this case either. But it's the case, it and Chivam Rin are the two that are, of course, as you know, that we're struggling with in there. And they're both a little bit wobbly. Right, in Al-Yazi, the question was whether there was the admission at the border or the adjustment was the relevant admission. The board in Al-Yazi found that since the subsection in play in that statute required the date of admission. The date. The date of admission. That referred to the date of the admission at the border as being the one for the relevant time period. And refresh my recollection. In that case, had the alien entered without inspection originally? Came in as a non-immigrant. They came in on a visa. They came in on a visa, Your Honor, I believe. But why wouldn't that be an admission? It was. And what the board said in matter of Al-Yazi was that the date of admission refers to the date of the admission for the admission into the country. And the overstaying, in the footnote that Petitioner's counsel was referencing, overstaying has no effect on the character of an admission. The board in Al-Yazi held that the relevant admission for a 1227A2A1, crime involving moral turpitude, within five years, you're looking to the admission at the border. Your result's going to be the same in this case because you're looking, the statute requires at any time after admission. 1227 applies to aliens who are present in the country and who have been admitted. Status is irrelevant. If you have been previously admitted to the country and you're in it, you're subject to the deportability grounds. Previously properly admitted. Yes, Your Honor. Under 1101A13A. But wouldn't that have been true in Al-Yazi also? Whatever it's pronounced, Al-Yazi also? Yes, Your Honor. Yeah. But in that case, the way the board read the statute was basically that the first, quote unquote, admission wasn't the relevant one. It was the second one that was the relevant one. It was the admission at the border that led to the physical presence in the country. Yes, Your Honor. That was the relevant admission. So when the board says that the date of admission, and again, I recognize it's a different subparagraph of 237. The date of admission refers to the date of admission by virtue of which the alien was present in the United States when he committed his crime. If what you said a minute ago for this case was true in Al-Yazi, that would have been the old one, not the new one. And that's not the way the board determined it, unless I'm missing something here. My recollection of the matter of Al-Yazi, Your Honor, was the board was reaching back to the entry at the border that led to the alien's physical presence at the time of the commission of the crimes. OK, they went back to the original. They did not stop at the adjustment. They reached all the way back to the admission at the border. And that was because that subsection includes the date of admission language. This one is more general. However, So it doesn't have the word the in it? It doesn't have the date of. It's just at any time after admission in this provision. So if you've been admitted, and you subsequently commit two crimes involving moral turpitude, you're subject to this ground of removal. So is it the government's position that admission means it's a term of art that means properly admitted? I've had that issue in some other cases, Your Honor. I'm sure you have. I know it's a fairly thorny one. Well, I don't think the government, I mean, I just want to be fair to you and give you a chance. But it seems to me the government's not entirely consistent on this point, depending on what part of the statutory scheme we're looking at. Am I wrong? No, Your Honor. I believe we're as consistent as we can be with the statute. Well, I'm not faulting you, because it's a patchwork. But we are where we are. We're doing the best we can. We are where we are. We're all doing the best we can. That's a different subject. But we are where we are. And opposing counsel raises this very point, that the term should be given the same meaning throughout. And that his client was entitled to rely on chivamarin. And I just would like to hear your best response to that. Chivaraman's analysis focused on the plain language of the statute. That was what was key. And that was, again, 1227A2A1, which is the date of admission. And so Chivaraman found that that dictated that you look to the entry at the border. So if you take the analysis of Chivaraman, my apologies to Chivaraman, and you apply it to this case, looking at the language of the statute, at any time after admission. So if you have an admission, and then at any time thereafter, you have two crimes involving moral turpitude, you have removability. Right. Again, and I just want to, I don't mean to belabor the point. But your view is, if you have somebody who's properly admitted, then at any time after. Is that right? Yes, Your Honor. And my hesitancy on that point is, I'm aware of some cases that talk about only a procedurally regular admission is required, as opposed to a substantively lawful one. Which means that if they're actually admitted at the border, even if they weren't entitled to be admitted, it counts as an admission. OK. Fair enough. But that's not in this case. Thank you. Anything further? No, Your Honor. Since there were two convictions for crimes involving moral turpitude following petitioner's admission, we submit that she is deportable, and the court should deny the petition for review. OK. Mr. Landry, you have a little over three minutes. Thank you, Your Honor. I happen to have the board's decision in front of me. And in Aliyah's 25 INN deck 397. And the alien in that case was a non-immigrant who enters in August of 2001. He overstays. April 2006, he becomes a permanent resident, so we're outside the five years. Then he commits the crime in 2007. And then the government puts him into removal proceedings  within five years of admission. So doesn't that mean that five years couldn't be the 2001 because that's more than five years? So it'd have to be the 2007 conviction. Well, in that case, though, didn't the board say that you can have more than one admission, but that in applying it, we're trying to avoid the absurdity that Judge Kristin presented to you by way of hypothetical. And therefore, there has to be some flexibility in the manner in which the statute is interpreted. Your Honor, I certainly understand the flexibility position and the intent of Congress. But if Congress doesn't tell us what they mean, and if they don't put it in plain language for the alien to understand what's going on. Let me read the language to you. This is out of Aliazi. And it's at the very end of the opinion. It looks like the third paragraph. I don't have a specific page site. It may be 406. Under this understanding of the phrase the date of admission, the five-year clock is not reset by a new admission from within the United States through adjustment of status. Rather, such a new admission merely extends an existing period of presence that was sufficient in and of itself to support the alien's susceptibility to the grounds of deportability. Why doesn't that language support the government's position here? Well, Your Honor, I think it does support the government's position, I guess. But like I said, from our perspective, when our petitioner made the decision on whether or not commit the crime or not in 2010, shouldn't she have been able to rely upon the Ninth Circuit president? She's subject to the Ninth Circuit president. And this is a case that came afterwards. We really wouldn't have put her on notice. What troubles me about that is not what she knew when she made the decision to make the crime. I'm a little more concerned about what she knew when she made the decision to enter a plea. Because she had a non-frivolous defense to this charge. And yet, there's this sentence, also on page 406. It says, we now hold that the statutory phrase, the date of admission, necessarily refers to a single date in relation to the pertinent offense. Thus, not every date of admission triggers the five-year clock. And it seems to me to be, we're just, we keep coming back to this point about this phrase being used inconsistently. We don't see that very often in case law, where we talk about it being permissible to construe the same phrase differently. I would agree, Your Honor. And I think there's a certain amount of due process and fairness that needs to be involved here. And another person comes to our country, and if they have the foresight to review our immigration laws and what our current case law is at that time, shouldn't we only be holding them to what that case law is at that time? Well, hence my question about, forgive me, go ahead. I was going to say, if there are phrases in conflict, there's statute. We've just recently learned that how we defined a crime of violence is now one whole half of it can't be used, because it's void for vagueness. And I think date of admission, I think that's clearly something that's void for, it's too confusing for, especially for anyone. Hence my question about the extent to which she may have relied upon this case law when she, since she was represented at the time she entered her plea the second time. And yet you're telling me that she hasn't got an IAC challenge pending. No, well, Your Honor, from the petitioner's perspective, these were, these were nothings. They were. Well, they're not nothings anymore. Yeah. Now they have real significance. And we appreciate that they're devastating consequences to your client. And that's why I just wondered if, and I belabored the point, but I wondered if she had returned to state court to see about any remedies there. And because the fact that these both qualify as crimes involving moral turpitude, as I understand it, is not challenged here. Well, it is challenged, but the court refused to accept it. I would agree. From my perspective, they are not crimes involving moral turpitude because they are no longer theft offenses. And Esponsa-Ponze, which is the case law that said that they're crimes involving moral turpitude, says they're only crimes involving moral turpitude because they're theft offenses and not theft offenses. So from my perspective. Your time has expired. Thank you. Thank you very much. Case just argued is submitted.
judges: Tallman, Christen, Kennelly